IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PHILIP LEE QUEEN, JR., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-24-2476 |
| WALT PESTERFIELD, et al., | * | |
| Defendants. | * | |

*****
## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Walt Pesterfield, Hilary Siakor-Sirleaf, David Greer, and Jennifer Magin's (collectively, "Defendants") Motion to Dismiss. (ECF No. 11). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will deny Defendants' Motion.

## I.  BACKGROUND[1]

### A.  Queens' Allegations

Self-represented Plaintiff Philip Lee Queen, Jr., is a state prison inmate presently housed at the Roxbury Correctional Institution in Hagerstown, Maryland. (ECF No. 8). At the time of the acts or omissions giving rise to the present complaint, Queen was a pretrial detainee at the Baltimore County Detention Center ("BCDC"). (Compl. at 4, ECF No. 1).[2]

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Queen was transferred to BCDC on April 29, 2024, and alleges shortly thereafter, he began to feel "abnormally bloated and gaseous with stomach pains and nausea." (Id.). After speaking with other inmates at the facility, Queen learned his symptoms were indicative of the H. pylori virus, which can be transmitted through contaminated drinking water. (Id.).

Queen submitted a sick call requesting to be tested for H. Pylori and he tested positive for the virus. (Id.). Queen submitted another sick call requesting to be tested for H. Pylori again, but an unidentified doctor wrote him back stating that while he was still positive for the virus, he was within the normal range and no further visits were required. (Id.).

The administration advised Queen that his complaints would be investigated, but Queen asserts that "[t]he administration . . . failed to investigate [his] complaint" and completely disregarded the issue of the contaminated drinking water, "even after notice was made to them." (Id. at 5–6). Queen states that he was diagnosed with gastritis and peptic ulcers and takes medication daily to decrease the acid production in his stomach. (Id. at 5).

**B.      Procedural History**

Queen, proceeding self-represented, initiated this action on August 23, 2024, by filing a Complaint against Defendants Walt Pesterfield, Hilary Siakor-Sirleaf, David Greer, and Jennifer Magin. (Compl. at 1). The action, filed under 42 U.S.C. § 1983, alleges the contaminated drinking water amounts to inhumane conditions of confinement in violation of Queen's rights under the Fourteenth Amendment to the United States Constitution. (Id. at 1–5). On October 30, 2024, Defendants filed a Motion to Dismiss. (ECF No. 11). Queen

filed an Opposition on November 15, 2024. (ECF No. 13). To date, Defendants have not filed a reply.

## II.     DISCUSSION

### A.     **Standard of Review**

In reviewing the complaint in light of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)); Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 325–26 (4th Cir. 2001); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. Id. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Id. at 679 (alteration in original) (quoting Fed.R.Civ.P. 8(a)(2)). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (internal citations omitted).

Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.    Extra Pleading Materials**

Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions.

4

First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

    Defendants attach four exhibits to their Motion: (1) Queen's BCDC Inmate Complaint Form, referenced in the Complaint as "Form #200" (ECF No. 11-2); (2) a medical report regarding Queen's medical care produced by BCDC's medical service provider (ECF No. 11-3); and (3) the results of water testing done at BCDC (ECF No. 11-4). The exhibits are not integral to the complaint and therefore cannot properly be considered under a motion to dismiss. Further, Defendants fail to style their Motion as a Motion in the Alternative for Summary Judgment, which may have permitted the Court to review these extraneous documents. Accordingly, Defendants do not provide any information disputing the facts as alleged by Queen and make purely legal arguments in support of their motion.

C.   <u>Analysis</u>

Defendants advance two main arguments in their motion: (1) Queen failed to plead sufficient facts to show Defendants acted with deliberate indifference toward Queen as required by the Eighth and Fourteenth Amendments, and (2) Defendants are nonetheless entitled to qualified immunity. (Defs.' Mem. Supp. Mot. Dismiss ["Mot."] at 1-2, ECF No. 11-1). The Court addresses each argument in turn.

   **1. Failure to Plead Sufficient Facts**

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." <u>Iko v. Shreve</u>, 535 F.3d 225, 238 (4th Cir. 2008) (quoting <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996)). Conditions of confinement that "involve wanton and unnecessary infliction of pain" or "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." <u>Id.</u> In order to establish the imposition of cruel and unusual punishment in conditions of confinement, a prisoner must prove two elements: that "the deprivation of [a] basic human need was objectively sufficiently serious, and that subjectively the officials act[ed] with a sufficiently culpable state of mind." <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995) (internal quotations and citation omitted).

For a prison official to be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement, "the official [must know] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from

6

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. See Farmer, 511 U.S. at 834, 837.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014) (quoting Farmer, 511 U.S. at 834). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36 (1993). Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "'deliberate indifference' to inmate health or safety.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 302–03 (1991)). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that the officials drew such an inference. Id. at 837. Where prison officials respond reasonably to a risk, they may be found not liable. Id. at 844.

Convicted prisoners are protected from inhumane conditions under the Eighth Amendment, but pretrial detainees are afforded greater protection under the Due Process Clause of the Fourteenth Amendment. See generally Kingsley v. Hendrickson, 576 U.S. 389 (2015). While convicted prisoners must show prison officials acted with a culpable

7

state of mind and actual knowledge under the Eighth Amendment, the Supreme Court has made clear that pretrial detainees need not prove subjective intent. Kingsley, 576 U.S. at 398. Rather, pretrial detainees may properly allege a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm on the "purely objective basis that the 'governmental action' they challenge is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023) (quoting Kingsley, 576 U.S. at 398).

To meet the objective standard in a conditions of confinement claim, the pretrial detainee must "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Shakka v. Smith, 71 F.3d 162 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering in the next week or moth or year" satisfies the objective standard under the Eighth and Fourteenth Amendments, even if "the complaining inmate shows no serious or current symptoms." Helling v. McKinney, 509 U.S. 25, 33-34 (1993); Webb v. Deboo, 423 F.App'x 299, 300 (4th Cir. 2011).[3]

---

[3] Both the Defendants and Mr. Queen offer conflicting accounts as to the status of Queen at the time of his detention at BCDC, referring to him interchangeably as both a convicted detainee and a pretrial detainee. However, according to Maryland public records, of which this Court takes judicial notice, Queen was tried from April 29, 2024 to May 3, 2024, and was sentenced on August 1, 2024. See State of Md. v. Queen, C-03-CR-23-004617 (Balt.Cnty.Cir.Ct. 2024). Because the alleged acts or omissions giving rise to the present action took place in or around April 2024, the Court finds that Queen was a pretrial detainee for purposes his Complaint. (See Compl. at 4–5). As such, the applicable legal

Here, liberally construed, Queen asserts that (1) he contracted a serious physical injury in the form of an illness, and (2) this illness was the result of drinking contaminated water after his arrival BCDC. (Compl. at 4). Queen's complaint of contaminated drinking water plausibly alleges deliberate indifference to an excessive risk of harm, even without his plain showing of actual injury. See Helling, 509 U.S. at 33 ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery"). Furthermore, Queen's complaint plausibly alleges supervisors at BCDC were subjectively aware and had actual knowledge of the contaminated water via Queen's complaint form. These allegations plausibly allege unconstitutional conditions of confinement under the more restrictive Eighth Amendment standard, which is sufficient to adequately plead a Fourteenth Amendment violation. See Short, 87 F.4th at 611.

2. **Qualified Immunity**

Defendants also raise a defense of qualified immunity. (Mot. at 5). "Qualified immunity bars § 1983 actions against government officials in their individual capacities unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." Barrett v. Pae Gov't Servs., Inc., 975 F.3d 416, 428 (4th Cir. 2020) (cleaned up); see also Taylor v. Riojas, 592 U.S. 7, 8 (2020); Halcomb v. Ravenell, 992 F.3d 316, 319 (4th Cir. 2021); Humbert v. Mayor & City Council

---

standards are those under the Fourteenth Amendment. Short, 87 F.4th at 611. To the extent Defendants refer to the legal standards under the Eighth Amendment, Mr. Queen nevertheless alleges sufficient facts to meet these standards.

of Baltimore City, 866 F.3d 546, 555 (4th Cir. 2017), cert. denied, 584 U.S. 1013 (2018); Scinto v. Stansberry, 841 F.3d 219, 235 (4th Cir. 2016); Hunter v. Town of Mocksville, N. Carolina, 789 F.3d 389, 401 (4th Cir. 2015).

In Owens v. Baltimore City Police Department, the Fourth Circuit reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" 767 F.3d 379, 395 (4th Cir. 2014), cert. denied sub nom., 575 U.S. 983 (2015).

Defendants' qualified immunity argument is unavailing. Queen has alleged facts suggesting that he suffered physical injury because of Defendants' failure to maintain a clean water supply, which at minimum alleges a claim for relief under the Fourteenth Amendment. Defendants simply conclude that their actions were not violative of a clearly established constitutional right. (See generally Mot.) Without more, Defendants' conclusory assertion that there was no clear violation of Queen's rights is insufficient, at this stage, to dismiss Queen's claims.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss. Defendants will be directed to file an Answer or other dispositive motion within 30 days. A separate Order follows.

Entered this 6th day of June, 2025.

_____/s/_____
George L. Russell, III
Chief United States District Judge
